## OWNERS OF THE SHIP MILWAUKIE *v*. PERLEY HALE AND BERNICE HALE.

The complaint under the "act to provide for the collection of demands against boats and vessels," (S. L..1839, p. 70,) should contain every substantial averment, which would be necessary in a declaration, at common law, for the same cause of action; and it is governed by the rules which apply to declarations, in respect to joinder and misjoinder of courts.

A complaint under that statute contained four counts; two of which were, in substance, that the plaintiffs shipped on board the vessel, which was employed by the owners as common carriers, a certain quantity of wheat, and, in consideration that the plaintiffs promised to pay a certain price for the transportation, the owners of the vessel received the wheat on board, and agreed to proceed directly from the place of shipment to the port of destination, and deliver the same in good order, &c., but that they did not take care of, and securely convey and deliver the said wheat, but, on the contrary, the vessel was so carelessly managed, &c. that the wheat was lost and not delivered. The other two counts set forth a like shipment and undertaking to deliver, &c. pursuing the ordinary and accustomed route, without unnecessary deviation, &c. and alledged a deviation, during which the ship was assailed by a great storm and wrecked, &c. and the wheat was wet, damaged, and spoiled and wholly lost, &c. and not delivered. *Held*, that all of these counts were in *assumpsit*, and properly joined.

Where it was assigned for error, that it appeared from the record, that, to the declaration or complaint, which was in assumpsit, the defendant had pleaded two pleas, non assumpsit and not guilty, and that it did not appear that the jury had passed upon but one of the issues; *Held*, that either of the pleas was a full answer to the whole declaration, and, whether the declaration was in assumpsit or case, would be good after verdict; and that, as the plea of non assumpsit met the whole declaration, the plea of not guilty might be treated as a nullity, and stricken from the record.

Where it appeared from a record that the jury were " duly elected, tried and sworn," but not that they were "sworn well and truly to try the issue, &c., *Held*, that this was no ground of error, and that the record might be amended in this respect, after error brought, in affirmance of the judgment.

Where a record showed that *talesmen* were called and sworn upon the jury, but it did not appear that they had the requisite qualifications of jurors; *Held*, that this was no ground of error, but that it would be presumed after verdict, (no challenge appearing to have been taken upon that ground,) that the jurors were qualified.

By going to trial, a party waives objection on the ground of the want of proper qualifications of the jurors.

Also, objection to the sufficiency of the oath administered to the jury.

Adjournments of the court from day to day, during the same term, are not continuances, which require to be stated in the record.

Where it does not appear from the record that the jury retired to consult, they will be presumed to have found the verdict without leaving their seats.

ERROR to Wayne Circuit Court.

This was an action commenced in the Circuit Court for the county of Wayne, under the act of 1839, providing for "the collection of demands against boats and vessels." The cause was tried at the May term of said Court in 1842, when a verdict was found and judgment rendered for the plaintiffs below.

As appears from the record of the judgment, the complaint contained four counts, as follows : The first count sets forth in substance that, on the 14th of October, 1839, the plaintiffs, by their agents, at St. Joseph, Michigan, where the ship was lying, bound for Buffalo, N. Y., shipped in good order, &c. a quantity of wheat, (about 5,730 bushels,) on board of said ship, which was employed by the owners as common carriers, between St. Joseph and Buffalo aforesaid, and in consideration that the plaintiffs promised to pay twelve and a half cents per bushel for transportation, the owners of said ship received the wheat on board, and agreed to proceed directly to Buffalo and deliver the said wheat in like good order, &c., (dangers of the lakes and rivers excepted.)    That under said agreement the vessel left St. Joseph with the wheat on board, but the owners did not, by themselves or the master, (although not prevented, &c.) take care of, and securely carry and deliver it, but on the contrary the vessel was so carelessly managed, &c. that the wheat was lost, and not delivered.

The second count sets forth the ageement to carry, the

shipment, &c. and a further agreement to pursue the ordinary and accustomed route to Buffalo, for a vessel of like burden and freight, without voluntary or unnecessary duration, &c. and to deliver in like good order, &c.    That the vessel left the port under said agreement, &c. but the master, (although not prevented, &c.) did not proceed to Buffalo according to such direct and ordinary route and deliver the wheat, &c. but sailed across lake Michigan, far out of the accustomed course, &c. and, while so deviating, was, on the western shore of the lake, near Southport, Illinois, assailed by a great storm, and wrecked, &c. whereby the wheat was wet, damaged and spoiled, and wholly lost, &c.

The third count corresponds in substance with the first, and the fourth with the second.

The defendant put in two pleas to the whole complaint, one of *non assumpsit*, and the other *not guilty*.

It appears further from the record that on May 12th, 1842, a jury was called, and, there not being a sufficient number of jurors in court, the sheriff, by order of the Court, summoned talesmen, " who, together with the jurors aforesaid, and *duly elected, tried and sworn*, hear part of the evidence," &c., and the cause is continued until the next day, and thereafter from day to day until May 17th ; "at which day, before the judges of the Circuit Court aforesaid, at the court house in the city of Detroit, come the parties by their attorneys aforesaid, and the *jurors aforesaid*, being called, *answer to their names respectively*, and say that the defendant did undertake and promise in manner and form as the said plaintiffs have alledged in their declaration, and they assess the said plaintiffs' damages at the sum of five thousand and forty-nine dollars and fifty-six cents.    Therefore, it is considered," &c.

The errors assigned to this record appear in the opinion of the Court.

*A. D. Fraser and George C. Bates,* for plaintiffs in error.

*A. & H. H. Emmons,* for defendants in error.

RANSOM, C. J. delivered the opinion of the Court.

The counsel for the plaintiffs in error assumes the ground that the *complaint* is in effect a *declaration*, and subject to the same rules of pleading, as well in matters of form as of substance.   The defendants, on the other hand, contend that it is not to be considered as a technical declaration, nor to be judged by the strict rules of pleading; that it is *in lieu* of a declaration, and therefore, though it may contain causes of action which could not be joined in a declaration at common law, the misjoinder cannot be objected to in this form of proceeding.

The first section of the act under which this suit is instituted, provides, that every boat or vessel used in navigating the waters of this state, shall be liable for all debts contracted by the master, &c. for supplies and materials furnished, for work and labor done, for wharfage and anchorage, for all injuries done to persons or property by said vessel, and "for all demands or damages accruing from the non-performance of any contract of affreightment, or of any other contract touching the transportation of persons or property, entered into by the master, owner, agent or consignee of the boat or vessel, on which such contract is to be performed."

The second and third sections authorize suits to be commenced, in such cases, against the boat by name, by filing a complaint in the office of the clerk of the Circuit Court.

The fourth section provides, that the complaint shall set forth the particulars of the plaintiff's demand, and on whose account the same accrued; that it shall be verified

by the affidavit of the plaintiff, or of some other credible person or persons for him, *and shall stand in lieu of a declaration.*

Under this statute, the complaint should set forth all the facts necessary to bring a case within the act; that the boat or vessel, against which the proceeding is had, is used in navigating the waters of this state; that the complainant has a claim or demand against such boat or vessel which has accrued in one or more of the modes specified in the first section; and, (that the proceedings may conform, as near as may be, to those in a suit commenced by summons,) the plaintiff, in setting forth the particulars of his demand, should make every *substantial* averment which would be necessary in declaring upon the same cause of action.   And the rules with regard to the joinder or misjoinder of counts, apply to such complaints with the same force and propriety, it seems to me, as to common law declarations.

Why should a plaintiff in such proceeding be permitted to join a cause of action arising from a breach of a contract of affreightment, with another arising from a tortious injury to his person or property, any more than he should be allowed to count upon a promissory note and upon a trespass for an assault and battery, or for carrying away goods, in the same declaration?    The settled rules of pleading would be alike violated in either case,—the same incongruity would exist in the record.    The defendant would be met by the same embarrassments in pleading and making his defence, in the one case as in the other. We think the policy of adhering to the settled forms of action and of pleading, is a sound one.

But it is insisted by counsel, that the statute has prescribed a new rule, in this special proceeding.   We think not.   The mischief of the *old* law was, that the owners of vessels navigating the waters of this state, were fre-

quently unknown to our citizens, with whom, through their agents, debts were contracted; or, if known, they resided without the jurisdiction of our courts. The remedy provided by the *new* law, is, an attachment or seizure of the vessel itself, instead of a summons of the owner.

The language of the act itself, if all its provisions be considered, it seems to me, is perfectly conclusive upon this point. The sixth section enacts, that, upon the return of such attachment, "proceedings shall thereupon be had in the Circuit Court against the boat or vessel sued, *in the same manner*, as near as may be, as if suit had been instituted by summons against the person on whose account the demand accrued." And by the following section it is provided that the master, owner, &c. of the vessel, may appear in its behalf, "and *plead to the action*, and defend the same."

If, then, we apply the general rules governing declarations to the complaint of the defendants in error, is it found sufficient?

The plaintiffs contend that it is defective. It contains four counts; two of which, the first and third, are admitted to be in assumpsit, setting up a contract, and averring a breach of it. But the plaintiffs insist, that the second and fourth counts charge them with a wilful and tortious neglect of a common law duty, as common carriers, and are, therefore, improperly joined with the others. We will first determine the character of the several counts; because, if they shall all be found to belong to the same class, and therefore to be well joined, it will be unnecessary to consider the effect of a misjoinder.

The first count is upon an agreement to carry wheat *directly* from St. Joseph to Buffalo. The breach assigned is, that the plaintiffs did not deliver the wheat, and that it was lost through their mismanagement and carelessness, &c.

The second alleges that, in consideration that the defendants had shipped wheat in the plaintiffs vessel, and had agreed to pay freight, at the rate of one shilling per bushel, the plaintiffs received the wheat on board their vessel, and faithfully *promised* and *agreed*, to pursue the ordinary and accustomed route from St. Joseph to Buffalo, and deliver the wheat at the latter place in good order. The breach is, that the vessel deviated from such route, and that the wheat was *wet, damaged and spoiled*, and not delivered to the defendants, at Buffalo, by the plaintiffs, according to their agreement.

The third count is substantially like the first, and the fourth like the second.

All the counts in this complaint, as well the second and fourth, as the first and third, are most clearly in assumpsit. They, each and all, set forth a *contract* between the parties, and a breach of that contract. The deviation, violation of duty, &c., are only the circumstances showing how the breach occurred. If those circumstances were omitted, the remaining part would constitute a good declaration in assumpsit.

I deem this point so clear, upon authority, that I shall not take time to review the cases, but will simply refer to them. *Powell* v. *Layton*, 5 B. & P. 364; *Boson* v. *Sandford*, 2 Show. R. 478; *Dale* v. *Hall*, 1 Wils. R. 281; *Burnett* v. *Lynch*, 12 E. C. L. R. 327; Gould's Pl. ch. 3, § 19; 1 Chitty's Pl. 329, '30; *Bank of Orange* v. *Brown*, 3 Wend. R. 158; *Buddle* v. *Wilson*, 6 T. R. 369; *Samuel* v. *Judin*, 6 East R. 333.

There is, then, no misjoinder of counts in the complaint. Another error relied upon, and the only one formally assigned, and the one most discussed on the argument, was, that there appeared upon the record two pleas to the complaint, and two distinct issues, and that by the verdict but *one* of the issues was passed upon by the jury.

Either of the pleas in this case is a full answer to the whole declaration, and whether it be assumpsit or case, either plea would be good after verdict.   As all the counts are conceived to be upon contract, and the plea of non assumpsit meets the whole declaration, the plea of not guilty may be treated as a mere nullity—a superfluity upon the record.   And, if necessary, for the sake of congruity in the record, that plea may be stricken off, even now.

Another objection urged by the plaintiffs to this record, is that the swearing of the jury is not well set forth.   The entry in the record is, that they were "duly elected, tried and sworn."   It is insisted that it ought to appear that they were sworn " well and truly to try the issue," &c. joined between the parties.

It is also objected that it is not alleged in the record, that the *talesmen* called and sworn upon the jury had the qualifications of jurors.

To the first of these objections it may be answered that it, in fact, goes only to the form of the clerk's entry, and, under our statute may be amended, if need be, after error brought, in affirmance of the judgment.   R. S. 461, '2.

As to the objection that the *talesmen* are not alleged to have had the requisite qualifications, it is sufficient to say that we will presume after verdict, no challenge having been taken on that ground, that none but qualified persons were called and sworn.

It may well be said, too, that both these objections,—the want of qualifications in the *talesmen*, if there had been any in fact, and the irregular oath administered to the jury, if in truth it was irregular,—were waived by the party's going to trial on the merits ; and so are the cases.   *Evans* v. *Lee*, 11 Pet. R. 85, is precisely to that effect.   In that case several irregularities were alledged to have intervened during the progress of the trial, and among others, that the

verdict had been returned by *eleven* instead of *twelve* jurors. The Court say, " These irregularities,—whatever might have been their original imperfections, if not waived,— were in our opinion waived, by the defendant's going to trial on the merits, and cannot now constitute any objection, upon the present writ of error."

If a party sitting by and seeing less than the requisite number of jurors sworn to try an issue, without objection, shall be deemed thereby to have waived the irregularity, shall he not, with greater reason, be supposed to have done so, if he hear an informal oath administered to the jury without objection, or see an unqualified juror called and sworn without challenge? Unquestionably he shall. Reason and common sense can furnish no other answer to the inquiry.

The fifth objection taken, is, that the jury, after being sworn, heard *part* of the evidence, and then were adjourned from time to time, for several days, before the trial was concluded. This is no ground of error. It is well argued by the defendants, that the facts stated as the foundation of this error are not properly before us, and that we ought not to consider them. They are, in truth, the mere journal entries of the clerk, made in the progress of the business of the court, and have no place in a judgment record. Adjournments of the court from day to day, during the same term, are not continuances that must be stated in the record. But, even if they are considered part of the record in this case, they are no ground for reversal of the judgment. It was a mere matter of discretion with the Court, at what times they would sit and adjourn; and that the trial occupied the Court and jury from the twelfth to the seventeenth of the month, in no way affects the validity of the judgment.

The last objection raised in the case, is, that it does not appear from the record that the jury were, at any time,

under the charge of a sworn officer, when they retired to consult of their verdict.

It does not appear that they retired at all.   The presumption is that they found their verdict without leaving the bar of the court, in which case no officer was necessary.

Upon an inspection of the whole record, we find no error therein, and the judgment of the Court below is therefore affirmed.

*Judgment affirmed.*